UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| SURAIYA AHMED | CIVIL ACTION NO. 26-0658 |
| | SECTION P |
| VS. | |
| | JUDGE JERRY EDWARDS, JR. |
| SOUTH LOUISIANA PROCESSING CENTER, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Petitioner Suraiya Ahmed,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [doc. # 10].  For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Ghana.  [doc. # 1-2, p. 3].  She "entered the United States without inspection . . . ." *Id.*  She was taken into immigration custody on January 13, 2025. [doc. # 1, p. 4].  An immigration judge ordered her removed from the United States to Ghana on November 27, 2025.  [doc. # 10-1, p. 14].  On December 22, 2025, Petitioner appealed the

---

[1] Petitioner's "A Number" is 249-126-444.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

removal order to the Board of Immigration Appeals ("BIA"). [doc. # 1, pp. 4-5]. The appeal is pending. *Id.*

Petitioner filed this proceeding on February 16, 2026. [doc. # 1, p. 8]. She first claims that the Government lacks statutory authority to detain her without providing a bond hearing. *Id.* at 6. She states that she is "held without a timely, legally justified showing of risk or flight concern." *Id.* She claims similarly that her detention without a bond hearing violates her right to due process. [doc. # 1-2, pp. 2, 5].

Petitioner next claims that the conditions in which she is confined are affecting her physical and mental health. [doc. # 1, p. 7]. She alleges similarly that she is not receiving "medical support or assistance." *Id.*

Next, Petitioner claims her "continued detention violates the Suspension Clause." [doc. # 1-2, p. 6]. She argues, *inter alia*, "No rebellion or invasion threatens public safety in a manner that would justify suspension of habeas corpus protections." *Id.*

Finally, Petitioner claims that she is entitled to release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). [doc. # 1-2, p. 6].

Respondents opposed the petition on April 22, 2026. [doc. # 10]. Petitioner filed a reply on May 6, 2026. [doc. # 15].

**Law and Analysis**

**I. Statutory Authority for Bond Hearing**

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th at 502. In reaching its conclusion, the court analyzed the meaning of "seeking admission"

and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: she is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to a bond hearing. The Court should dismiss her statutory claim accordingly.

**II. Due Process**

Petitioner claims that the Due Process Clause entitles her to a bond hearing. In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.

In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.

The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. An immigration judge ordered her removed on November 27, 2025, and Petitioner thereafter chose to appeal, which will likely extend her detention until the BIA decides her appeal. Petitioner's

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

detention will likely end (i) when her order of removal becomes final (if the BIA affirms the order of removal or dismisses Petitioner's appeal) and the Government removes her or (ii) if the BIA rules in Petitioner's favor.  Accordingly, the Court should deny Petitioner's claim.

### III. *Zadvydas v. Davis*

Petitioner claims that she is entitled to release under *Zadvydas v. Davis*, 533 U.S. 678 (2001).  [doc. # 1-2, p. 6].

In *Zadvydas v. Davis*, 533 U.S. 678 (2001) (emphasis added), the Supreme Court held that if an alien is detained for six months after a ***final*** order of removal, and if the alien petitioning for habeas corpus "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.  "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*

Petitioner's claim, however, is premature because her appeal before the BIA is pending and, thus, her order of removal is not final.  *See Lopez Acosta v. Rosen*, 2021 WL 54772, at *1 (5th Cir. Jan. 6, 2021) ("Because Lopez Acosta is currently pursuing administrative remedies below, he is no longer subject to a final order of removal . . . ."); *Castillo-Rodriguez v. I.N.S.*, 929 F.2d 181, 183 (5th Cir. 1991) ("The order of the immigration judge, then, is not final when a timely appeal is taken to the Board.").

Under 8 U.S.C. §1101(a)(47), an "order of deportation" becomes final upon the earlier of: "(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."  Likewise, under 8 C.F.R. § 1241.1, "An order of removal made by the

5

immigration judge . . . shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals . . . ."  *See Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

The Court should dismiss this claim.

## IV. Suspension Clause

Petitioner claims that her "continued detention violates the Suspension Clause."  [doc. # 1-2, p. 6].  She argues, *inter alia*, "No rebellion or invasion threatens public safety in a manner that would justify suspension of habeas corpus protections."  *Id.*  She states that the Suspension Clause requires "meaningful judicial review of the legality and necessity of her continued confinement."  *Id.*

The Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. CONST. ART. I, § 9, cl. 2.

Here, neither the Government nor this Court is suspending the privilege of the writ of habeas corpus.  In fact, the Court *is* reviewing and adjudicating Petitioner's petition and constitutional claims now.  Contrary to Petitioner's argument, this proceeding is not a "toothless procedural formality."  [doc. # 15, p. 8].  Petitioner argues that "the availability of a habeas petition is meaningless if the writ provides no remedy."  *Id.* at 7.  But the undersigned finds this argument unpersuasive because courts routinely deny habeas petitions in various contexts, and petitioners therefore do not receive their requested remedies.  Denied habeas remedies do not render habeas petitions meaningless.

Petitioner argues: "The government's position that mandatory detention provisions eliminate all judicial review of prolonged confinement would effectively suspend the writ of habeas corpus without meeting the constitutional requirements for such suspension."  [doc. # 1-2,

6

p. 6]. She argues further, "The Suspension Clause does not permit Congress to authorize indefinite detention by statute and thereby eliminate habeas review." [doc. # 15, p. 8]. As above, however, the undersigned does not opine that any statutory authority forecloses Petitioner's constitutional claims. Accordingly, this claim should be dismissed.

**V. Conditions of Confinement and Medical Care**

Petitioner claims that the conditions in which she is confined are affecting her physical and mental health. [doc. # 1, p. 7]. She alleges similarly that she is not receiving "medical support or assistance." *Id.*

"Simply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose. While it is correctly alluded to as the Great Writ, it cannot be utilized as . . . a springboard to adjudicate matters foreign to the question of the legality of custody." *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).

"Allegations that challenge the fact or duration of confinement are properly brought in habeas petitions, while allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007). "A § 2241 habeas petition is the proper procedural vehicle for challenging an action that 'directly implicates the duration of' a prisoner's confinement. *Davis v. Fechtel*, 150 F.3d 486, 487, 490 (5th Cir. 1998). It is not, however, the proper procedural vehicle for claims . . . regarding the conditions of confinement." *Boyle v. Wilson*, 814 F. App'x 881, 882 (5th Cir. 2020).[4]

---

[4] *See Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) ("[A] habeas petition 'is the proper vehicle to seek release from custody,' while a civil rights suit pursuant to 42 U.S.C. § 1983 for a state prisoner or under *Bivens* for a federal prisoner is 'the proper vehicle to attack

In *Moore v. King*, No. 08-60164, 2009 WL 122555, at *1 (5th Cir. Jan. 20, 2009), for instance, the petitioner sought habeas relief, challenging the conditions of his confinement.  The court affirmed the dismissal of his claim, citing *Pierre* for the rule that habeas is simply not available.  Likewise, challenges concerning medical care are not cognizable here.  *See Mora v. Warden, Fed. Corr. Complex, Yazoo City Medium*, 480 F. App'x 779, 780 (5th Cir. 2012) (affirming dismissal of a 2241 petition as "not cognizable" because it related to the petitioner's "medical needs, and a determination in his favor would not result in his accelerated release"); *Figueroa v. Chapman*, 347 F. App'x 48, 50 (5th Cir. 2009) ("[T]he district court found it could not grant her relief pursuant to Section 2241 because her application was 'not in reference to the imposed sentence—but for medical needs.' We agree."); *McBarron v. Jeter*, 243 F. App'x 857, 857 (5th Cir. 2007); *Watson v. Briscoe*, 554 F.2d 650, 652 (5th Cir. 1977).

Petitioner's claims are plainly unrelated to the cause of her detention.  The Court should dismiss them.[5]

## VI. Procedural Due Process

Citing *Mathews v Eldridge*, 424 U.S. 319, 335 (1976), Petitioner claims that absent a bond hearing, Respondents are violating her right to procedural due process.  [doc. # 15, p. 6].

---

unconstitutional conditions of confinement and prison procedures.'") (quoting *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997)).

[5] If Petitioner desires to pursue a civil rights action, she must file a separate proceeding, using the appropriate complaint form.  Petitioner should be aware that to file a separate civil rights proceeding, she must either pay the required filing fee or submit a properly executed application to proceed in forma pauperis.  Petitioner is advised that the cost of litigating a civil rights complaint is significantly higher than the cost of litigating a habeas corpus petition.  Petitioner should likewise be aware that she must exhaust all available administrative remedies before pursuing relief in this Court for her claims concerning her conditions of confinement and medical care.

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]"  U.S. CONST. AMEND. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Id.* at 690.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations."  *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993).  "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner."  *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)).  "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'"  *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above weighs in Petitioner's favor as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Living in the United States (albeit, not on parole, bond, or other supervision), Petitioner established a liberty interest.  *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not).  She writes, "The separation from her spouse caused by her prolonged detention has created additional emotional hardship and demonstrates collateral consequences of the government's decision to maintain her in custody . . . ." [doc. # 1-2, p. 4]. Terminating her valued liberty likely inflicted a grievous loss.  *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").  That said, Petitioner always knew that she was in the United States without permission, which qualifies her liberty to a degree.[6]

---

[6] *See generally Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. 2000) ("A prisoner who is mistakenly released does not have a protected liberty interest because, unlike a parolee, he does not have a 'legitimate claim of entitlement' to freedom.").

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—leans in Respondents' favor.  Petitioner does not offer any reason why not providing process to her before she was detained—i.e., before the Government terminated her liberty interest—risked error.  The Government has provided process after detaining her in the form of a Notice to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and an appeal.  She has received or will receive opportunities to be heard on relevant issues such as her identity, whether she was not "admitted or paroled after" she entered the United States,[7] the country of which she is a citizen, the country or countries which might accept her, when she entered the country, and whether she is entitled to asylum or other protection.

Petitioner appears to only seek post-deprivation process in the form of a bond hearing. From what the undersigned can glean, she appears to argue that the potential error in failing to provide a bond hearing is detaining an individual who is not a flight risk or a danger to society. However, as explained above Respondents are statutorily required to detain her under 8 U.S.C. § 1225.  Thus, even if a neutral decisionmaker determined that she was not a flight risk or a danger, Respondents would still detain her.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published.  The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6.  Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing

---

[7] [doc. # 10-2, p. 1].

under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*" *Id.* at 8 (emphasis added). Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders. *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain her and remove her.[8] Relevant issues, for example, include her identity, citizenship, whether she was ever admitted or paroled, when she entered this country, and whether she is entitled to protection from removal. And as explained above the Government has already provided and is providing (via her appeal) processes for these issues. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute."). All of this is to say that there is little, if any, risk of error in terminating her liberty without providing her a post-deprivation bond hearing.

---

[8] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, however, Petitioner does not contend that she is entitled to release for urgent humanitarian reasons or for significant public benefit. And even if she did, she had and has the opportunity to present such a contention in her removal proceedings. *If* the Secretary of Homeland Security agreed, *then* Petitioner could attempt to demonstrate that she is neither a security risk nor a risk of absconding.

12

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—weighs in the Government's favor. The Government has a significant interest in protecting the community and preventing flight. Petitioner eluded immigration authorities, demonstrating that she is a possible flight risk. Thus, affording her a bond hearing could burden the Government's interest in preventing flight. And even assuming Petitioner sought pre-deprivation process, providing it to her and others who entered the United States without permission—i.e., providing notice of the intent to detain them *before* detaining them—would create an appreciable risk of evasion before arrest/detention.

Accordingly, the Government has not violated Petitioner's right to procedural due process. The Court should dismiss this claim.

### Recommendation

For reasons above, **IT IS RECOMMENDED** that Petitioner Suraiya Ahmed's petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

**legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

*Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 8th day of May, 2026.

 

 

_____
Kayla Dye McClusky
United States Magistrate Judge

14